IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE TRUSTEES OF PRINCETON UNIVERSITY, <br> Princeton, New Jersey 08544, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, <br> 400 Maryland Avenue, SW <br> Washington, DC 20202, <br><br> Defendant. | Civil Action No. 24-cv-1475 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff The Trustees of Princeton University ("Princeton" or the "University") brings this action against Defendant United States Department of Education (the "Department" or "Defendant"), alleging as follows:

**INTRODUCTION**

1. This action is brought under the Freedom of Information Act ("FOIA"), 5. U.S.C. § 552 *et seq.*, for declaratory, injunctive, and other appropriate relief to compel disclosure and release of records to Princeton.

2. On or about December 8, 2022, Princeton submitted a FOIA request to the Department seeking, among other materials, information and records in the Department's possession relating to an investigation into Princeton that the Department had undertaken in 2020. In the 17-plus months since Princeton submitted its request, and despite numerous follow-up communications by Princeton to the Department regarding the status of Princeton's request, the Department has failed to respond as FOIA requires.

3. The deadline for the Department to respond is long since past, and there is no lawful basis for the Department's failure to respond—indeed, the Department has not so much as requested additional time to respond, let alone provided an explanation for why it needs more time to do so. Because Princeton has constructively exhausted its administrative remedies, it has no options but to seek judicial relief through this Complaint. *See* 5 U.S.C. § 552(a)(6)(C).

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

6. Princeton is a private, non-profit educational institution with its principal place of business at Princeton University, Princeton, New Jersey 08544. Princeton is a "person" within the meaning of 5 U.S.C. § 551(2).

7. The Department is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). The Department has possession and control of the requested records.

## FACTUAL ALLEGATIONS

8. In June 2020, in response to the unjust killings of George Floyd, Breonna Taylor, Ahmaud Arbery, and many others, and the widespread protests that ensued, Princeton's President, Christopher Eisgruber, charged University leadership with developing plans to combat the lingering effects of systemic racism on Princeton's campus and beyond.

9. On September 2, 2020, President Eisgruber wrote to the University community describing several planned University initiatives, including new funding for teaching, research,

and service projects related to racial justice, and several additional priorities and initiatives meant to combat systemic racism.

10.     Two weeks later, by letter dated September 16, 2020, the Department notified President Eisgruber that it had opened an investigation into Princeton's non-discrimination practices. To that end, the Department demanded that Princeton produce documents purportedly related to diversity measures and the University's compliance with federal non-discrimination laws. The Department also demanded that Princeton answer written questions and make personnel available for transcribed interviews.

11.     Following the public disclosure of the Department's investigation of Princeton, elected officials, college and university presidents, and other education-focused organizations voiced concern that the investigation was intended to chill efforts by educational institutions to reckon with the legacy of racial injustice, through the use of intrusive and onerous investigative demands.

12.     In a letter dated October 2, 2020, New Jersey's Senate delegation wrote to then-Secretary of Education Betsy DeVos expressing "concern[ ] that the Department of Education's effort to undermine Princeton's efforts to combat systemic racism on campus will have a chilling effect on [other] institutions also undergoing a similar type of examination."[1]  Likewise, a group of more than 80 college and university presidents signed on to a letter dated September 24, 2020, urging the Department to drop its purported investigation of Princeton, explaining that educational

---

[1] Senators Booker and Menendez Letter Concerning Princeton Investigation (Oct. 2, 2020), https://www.booker.senate.gov/imo/media/doc/Senators%20Booker%20and%20Menendez%20Letter%20Concerning%20Princeton%20University%20Investigation%20October%202_.pdf.

institutions across the country were grappling with the legacy of racial injustice.[2] Around the same time, the American Educational Research Association and National Academy of Education issued a statement on the Department's investigation, stating: "[W]e need educational systems that are not politicized and censored, but rather seek the truth by exploring even the most difficult truths."[3]

13. In January 2021, the Department closed its investigation without issuing any findings or taking any action against the University. Consequently, the University, which has always endeavored to operate in full compliance with applicable laws, was left in the dark with respect to the programs or issues—if any—that the Department considered in its investigation.

14. On December 8, 2022, Princeton submitted a FOIA request to the Department, requesting the following records:

a. All correspondence between the Department and non-governmental persons or entities that references (1) Princeton or its President, Christopher Eisgruber, and (2) race, racism, discrimination, equal opportunity, or diversity. The time frame for this request is January 1, 2017, to January 19, 2021, and all searches for President Christopher Eisgruber should include "President Eisgruber," "Mr. Eisgruber," "Christopher Eisgruber," "Chris Eisgruber," or, simply, "Eisgruber."

b. All records that constitute Department decisions and reference Princeton or President Christopher Eisgruber. The time frame for this request is January 1, 2017, to January 19, 2021.

c. All factual material, including factual summaries or factual portions of larger records, that reference Princeton or President Christopher Eisgruber. The time frame for this request is January 1, 2017, to January 19, 2021.

d. All records, including communications with parties outside the Department, that relate to the Department's decision to open an investigation into Princeton's compliance with 42 U.S.C. § 2000d *et seq.*, 20 U.S.C. § 1094(c)(3)(B), or 34 CFR 668.71(c). This request includes, without limitation, the decision to initiate the

---

[2] Presidents' Letter Regarding the Dep't of Education's Princeton Investigation (Sept. 24, 2020), https://www.amherst.edu/about/president-college-leadership/president/past_presidents/biddy-martin/statements/node/780574.

[3] Statement in Support of Anti-Racist Education (Sept. 24, 2020), https://www.aera.net/Newsroom/Statement-in-Support-of-Anti-Racist-Education.

      investigation referenced in the letter from DOE to President Eisgruber dated September 16, 2020. The time frame for this request is January 1, 2017, to January 19, 2021.

    e. All records that relate to the Department's decision to close an investigation into Princeton's compliance with 42 U.S.C. § 2000d *et seq.*, 20 U.S.C. § 1094(c)(3)(B), or 34 CFR 668.71(c). This request includes, without limitation, the decision to close the investigation referenced in the letter from the Department to President Eisgruber dated September 16, 2020 (attached as Exhibit A). The time frame for this request is January 1, 2017, to January 19, 2021.

    f. All records that reflect the Department's policies created between January 1, 2017, and January 1, 2021, concerning or related to race, discrimination, nondiscrimination, equal opportunity, speech, or the First Amendment.

    g. All records that reflect the Department's policies created between January 1, 2017, and January 19, 2021, regarding public statements made by educational institutions or representatives of educational institutions.

    h. All correspondence between the Department and non-governmental persons or entities that concerns or references a university (other than Princeton) and statements made by that university or one of its representatives about race, racism, discrimination, diversity, or equal opportunity. This is including, but not limited to, statements that reference Black Lives Matter, George Floyd, Ahmaud Arbery, Laquan McDonald, Philando Castile, Trayvon Martin, Eric Garner, Colin Kaepernick, Breonna Taylor, or Jacob Blake. The time frame for this request is January 1, 2017, to January 19, 2021.

15. Having heard nothing in response to its request, Princeton sent letters to the Department on February 2, 2023 and April 21, 2023, each time requesting immediate responses to the request.

16. Still unable to secure a response to its request, Princeton next attempted to contact the Department's FOIA Service Center by phone. Those efforts were also unsuccessful.

17. Throughout the summer of 2023, Princeton (through legal counsel) sent multiple emails to Robert Wehausen, the Director of Operations for the Department's FOIA Service Center. Although Mr. Wehausen responded to some of those emails, indicating an intent on the part of the Department to provide Princeton with a substantive response, a substantive response was not provided.

5

18. On August 11, 2023, Princeton (through legal counsel) went so far as to provide the Department with a watermark draft of an earlier version of this Complaint. That email prompted a further exchange of emails culminating with a Teams conference on August 31, 2023, at which Department representatives pledged orally to provide a response within one to two months.

19. Following what by then had become a familiar pattern, the Department did not respond to Princeton within that timeframe.

20. In what constitutes its sole official correspondence to Princeton regarding the FOIA request at issue, the Department acknowledged Princeton's request by letter dated October 17, 2023, and informed Princeton that the request had been docketed as No. 23-00700-F. The Department incorrectly described the request as having been dated January 6, 2023, but emphasized to Princeton in bold type that "nothing more is required from you at this time."

21. On November 2, 2023, having heard nothing of substance from the Department following the Teams conference on August 31, Princeton again reached back out (through counsel) to the Department to inquire about the status of the Department's response, and was informed by Mr. Wehausen two weeks later, by email of November 16, 2023, that the FOIA Service Center was in possession of responsive records and that an estimated completion date would be forthcoming.

22. After that, however, all lines of communication from the Department went cold. Email outreach to the Department by counsel for Princeton on December 9, 2023, December 27, 2023, and January 9, 2024, went unanswered.

23. The Department has never attempted to extend the statutory deadlines applicable to its response to the request. By law, therefore, the Department was required to respond to the request by January 24, 2023. 5 U.S.C. § 552(a)(6)(A); 34 C.F.R. § 5.21(c).

24. The Department has yet to make available any records responsive to the request, or even to notify Princeton in the first instance of the Department's determination of whether it will comply with the request.

25. Because the Department has failed to comply with deadlines set by FOIA, Princeton has exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

### COUNT I: FAILURE TO PROVIDE A DETERMINATION

26. Princeton realleges and incorporates by reference paragraphs 1 through 25 as if fully set forth herein.

27. The Department was required to determine whether to comply with the request within 20 days (excepting Saturday, Sunday, and legal public holidays) and to immediately notify Princeton of the agency's determination and the reasons for it. Even if the Department had invoked a 10-day extension under 34 C.F.R. § 5.21(e), the time for compliance would have expired on January 24, 2023.

28. Although the Department intimated through Mr. Wehausen's email of November 16, 2023, that the Department had responsive documents and was intending to complete its processing of the request, it never notified Princeton of an actual determination.

29. The Department's failure to determine whether to comply with the request and to immediately notify Princeton of its determination within the statutorily prescribed time limit violates FOIA, 5 U.S.C. § 552(a)(6)(A), (B), and applicable regulations promulgated thereunder.

## COUNT II: FAILURE TO MAKE RECORDS AVAILABLE

30. Princeton realleges and incorporates by reference paragraphs 1 through 25 as if fully set forth herein.

31. Absent a legal justification by the Department for why it should not or cannot comply with Princeton's request, which the Department has never provided, Princeton has a right under FOIA to obtain the agency records sought through its request of December 8, 2022, and there exists no legal basis for Defendant's failure to promptly make the requested records available to Princeton and the public.

32. Defendant's failure to promptly make available the records sought by Princeton in the request violates 5 U.S.C. § 552(a)(3)(A), and applicable regulations promulgated thereunder.

## REQUEST FOR RELIEF

WHEREFORE, Princeton respectfully requests that judgment be entered against Defendant United States Department of Education and that this Court:

(1) Declare that Defendant violated FOIA by failing to determine whether to comply with the request within statutorily prescribed time limits and by failing immediately thereafter to notify Plaintiff of such determination and the reasons therefor;

(2) Declare that Defendant violated FOIA by unlawfully withholding the requested records;

(3) Order Defendant, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Princeton's request;

(4) Order Defendant, by a date certain, to disclose all non-exempt records responsive to Princeton's request, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(5) Award Princeton its costs and reasonable attorney fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) Grant such other relief as the Court may deem just and proper.

Dated: May 17, 2024

Respectfully submitted,

By: /s/ Daniel Wolff
    Daniel Wolff, D.C. Bar No. 486733
    CROWELL & MORING LLP
    1001 Pennsylvania Avenue, N.W.
    Washington, DC 20004-2595
    (202) 624-2500
    dwolff@crowell.com

    *Attorney for The Trustees of Princeton University*